# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EDWARD REICHERTER,

                    Plaintiffs,

                                          **VERIFIED COMPLAINT**
                                          *Jury Trial Demanded*

-against-

TOWN OF HEMPSTEAD,

                    Defendant.
----------------------------------------------------------X

Plaintiff EDWARD REICHERTER, by and through his attorneys, The Law Office of Steven A. Morelli, P.C., respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Edward Reicherter has worked for Defendant Town of Hempstead (the "Town") for almost thirty years. Over the course of his tenure with the Town, Mr. Reicherter proved himself a dedicated, loyal, and capable employee, as he went above and beyond numerous times during his service to the Town. Over the course of Plaintiff's tenure with the Town, Mr. Reicherter was an active and outspoken member of his union, and candidly shared his political views and affiliations. The Town used Mr. Reicherter's views against him and subjected Plaintiff to a pattern of harassment and retaliation predicated upon his Union activities and political affiliations.

2. This action is brought under the First Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, and also contains any other cause of

1

action which can reasonably be inferred from the facts set forth herein, to redress violations of Plaintiff's rights as guaranteed by the laws of the United States and the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff EDWARD REICHERTER ("Reicherter") is a resident and domiciliary of Nassau County, New York. At all times relevant to this complaint, Plaintiff was an "employee" of Defendant Town of Hempstead.

6. Defendant TOWN OF HEMPSTEAD (hereinafter the "Town") at all relevant times, was and still is a municipal corporation duly formed pursuant to the laws of the State of New York, with its principal place of business at One Washington Street, Hempstead, New York 11550. At all times relevant to this complaint, Defendant was Plaintiff's employer.

## **FACTUAL ALLEGATIONS**

### *Background*

7. The Town of Hempstead Parks and Recreation Department (the "Department"), at all relevant times, was and still is an agency of the Town of Hempstead with its central office located at 200 North Franklin Street, Hempstead, New York 11550.

8. Plaintiff has spent almost thirty years working for the Town as a park supervisor with the Department of Parks and Recreation. Plaintiff has also served as Assistant Chief and Chief of the East Rockaway Fire Department.

9. In 2006-2007 Plaintiff held the back-up supervisor position at Oceanside Park. During this time Plaintiff was also the third assistant chief of the East Rockaway Fire Department ("ERFD"). When Plaintiff first started going on fire calls he was asked to bring in the fire department call sheets. Plaintiff was later told to "forget it" and proceeded to go on Fire Calls with no questions asked.

10. In 2009 Plaintiff passed the Supervisor III test. Plaintiff continued working at Oceanside Park and still went on fire calls. During this time Plaintiff held the position of 1st Assistant Chief.

11. In 2010, Plaintiff was Chief of the ERFD and was transferred to Newbrige Road Park as a Supervisor. At this time he was given the responsibility of one main

park and three satellite parks. Plaintiff did not go on Fire Calls while holding this position. Newbrige Road Park is located outside of the responding district.

12. In or around July 2010, Mayor Ed Sieban passed away. Following Mayor Sieban's passing, things changed for the Plaintiff politically.

13. As the Chief of the ERFD Plaintiff felt it was a conflict of interest to campaign for either of the two parties running for the Mayor election. Furthermore, as a resident of Bay Park, which is run by the Town, Plaintiff was not even eligible to vote in the East Rockaway election.

14. Plaintiff told Councilman Anthony Santino that he wanted to remain neutral because he would need to work with whichever party won the election. In response, Plaintiff was absurdly scratched off of the Republican club committee man list, without notice.

15. Further, Plaintiff discovered that at a Republican Club meeting, he was eliminated from the list which effectively severed his membership with the East Rockaway Republican Club.

16. Ultimately, Fran Lennhan, the Republican cCub candidate, won the election and a new village hall administration was hired. Soon after this change in

4

administration, friction developed between the village administrators and the Chief's office. Plaintiff, in particular, was personally attacked.

17. Specifically, in or around 2011, Plaintiff was re-elected as third assistant chief of the ERFD. At such time Plaintiff was inexplicably transferred to Shell Creek Island Park as a backup Supervisor to John Zappola. Defendant provided no explanation as to why Plaintiff was transferred. At Shell Creek, Plaintiff was put in charge of a satellite beach- Harbor Isle.

18. Meanwhile, Plaintiff's back up supervisor at the Newbrige Road location, Brian Dazzo, became the new Park Supervisor. This was especially curious, as Dazzo had far less qualifications than Plaintiff and had never before held a supervisory position. Despite Dazzo's inferior employment history, Defendant appointed him as Park Supervisor over Plaintiff at its Newbrige Road location.

19. Plaintiff's transfer put him back in responding distance and Plaintiff proceeded to go on fire calls and reported to his supervisor John Zappola.

20. In 2012, Plaintiff was still assigned to Shell Creek. In or around October 2012, Hurricane Sandy hit Long Island. As a result, Harbor Isle suffered catastrophic damage, both to the Buildings and the grounds. Plaintiff's own home was also severely damaged and his family was forced to relocate.

5

21. At such time, Plaintiff took emergency leave from his duties with Defendant. Specifically, Plaintiff did not work from approximately November 2012 to the beginning of January 2013.

22. Throughout November, Tom Smith made several calls to town hall regarding Plaintiff's use of the ERFD Chief Truck.

23. In January 2013 Plaintiff was reelected to the position of Chief of the ERFD.

24. On January 7, 2013, Plaintiff returned to work. To address the damage left in Hurricane Sandy's wake, Plaintiff organized the total tear down and demolition of the maintenance building, office and bathrooms.

25. The grounds needed to be cleared so crews from tech services could be sent over to help repair the damage.

26. During such time, Plaintiff continued to respond to calls sporadically throughout the day. When Plaintiff would leave the park to respond to calls he would dutifully inform Zappola of his departure.

27. In or around March 2013, Plaintiff was brought into the Union office where Special investigator Enright and Union Representative Peter Giordano questioned Plaintiff about his whereabouts for the three months after Sandy. Plaintiff

6

explained his situation and that he had to take an emergency leave, which included Plaintiff's vacation time.

28. After leaving the Union Office, Plaintiff contacted Anthony Santino to see if he knew about the meeting and why he was being questioned regarding his emergency leave. Santino told Plaintiff that he would look into the matter but never called Mr. Reicherter back.

29. Plaintiff has a difference of opinion with Ex-Chief Chris Shelton who worked personally for Santino. Specifically, Plaintiff and Chris Shelton disagreed regarding former Chief Steve Torhorg.

30. In prior dealings, Shelton told Plaintiff that he needed to vote against Torhog to have him thrown out of the department. Instead, Mr. Reicherter voted to keep Torhog in the department. Following this, the Town subjected Mr. Reicherter to increased harassment and discrimination.

31. In or around May 2013, Plaintiff was called back in for questioning. Specifically, Plaintiff was summoned to Enright's office and was accompanied by Union Representative Joanne Delgato. During this meeting Plaintiff was again questioned about his whereabouts, this time for January, February, and March.

32. Plaintiff explained that he had done nothing wrong and was responding to fire calls as he had in the past. Plaintiff further explained that the Town was still devastated from Sandy and that the Fire Department was undermanned. He also indicated that when he left the Park for fire calls he always notified his supervisor, Zappola, and was never before told not to respond or leave his post.

33. Following this meeting, the tension between the Fire Department administration and the Defendant's regional supervisor, Bob Ward, intensified. Mr. Ward stated that Plaintiff would be sent to "a certain park to clean bathrooms" and comments equally degrading in nature.

### *Adverse Employment Action*

34. On or about August 26, 2013, Plaintiff was asked to go to the Town Hall to pick up his pay checks, which he had done before in the past.

35. Upon his arrival, Plaintiff was brought into Deputy Commissioner Mike Zappolo's office. Union representative Joanne Delgato, Union Representative Billy Kavatso, Regional Supervisor Bob Ward and Secretary Amy Rosen were also in attendance.

36. At such time, Defendant unceremoniously terminated Plaintiff's employment.

8

37. Mr. Reicherter was understandably shocked to hear of his untimely dismissal. Indeed, Plaintiff had not received any warnings, papers, phone calls, or other type of notification indicating that his longstanding employment with the Town was in jeopardy.

38. At this time Plaintiff was asked to sign papers of termination, which Plaintiff refused to do. Mr. Reicherter further asked for Union Representation.

39. Plaintiff called the union office in Albany and was directed to Louis Strobers' office. Thereafter, Alysssa Bomze was assigned to Plaintiff's case.

40. Plaintiff challenged his termination and engaged in an arbitration to grieve his dismissal. As a result, Plaintiff was reinstated and returned to work on June 2, 2014.

41. Immediately upon his return to work, Defendant callously retaliated against Mr. Reicherter for participating in the arbitration. Specifically, Mr. Reicherter was charged with misconduct for leaving the Park without permission, a charge which was not included in the original arbitration by the Defendant against the Plaintiff.

42. Indeed, during the arbitration, Defendant specifically said they would *not* attach this charge to Mr. Reicherter's file. Despite these assurances, however, the Town lodged this charge against Plaintiff.

9

43. Upon his return, Plaintiff was placed at Town Hall as an office secretary. Defendant knew that Plaintiff is a Park Supervisor III and did not have the required skills to be an office secretary. Indeed, Plaintiff has limited computer skills and very limited typing skills. In his current position Plaintiff answers phones and records Fire Department Softball scores.

44. Upon information and belief, Defendant purposefully set Plaintiff up to fail in retaliation for his participation in the aforementioned arbitration.

45. Further, Defendant appallingly usurped Plaintiff's accrued personal and sick time. Indeed, when the Plaintiff was reinstated to his position he received papers indicating that he would receive all of his prior sick and vacation time.

46. However, Commissioner Joe Bentivegna went against said promises, and announced that Mr. Reicherter would have to start over with only 4 hours sick and 4 hours Vacation time.

47. Plaintiff holds numerous certifications and a CDL-A License. He has worked outside and with his hands for the Town for the last thirty years. However, when positions outside the Town Hall office become available, his applications were inexplicably passed over.

48. For example, Mr. Reicherter has signed up for the special district Park Supervisor test. Plaintiff met all of the proper requirements, and the Town readily took Plaintiff's application and application fee.

49. Thereafter, the Town denied Mr. Reicherter's application to take the test. As justification for this rejection, Defendant told Mr. Reicherter that he did not have 12 consecutive months as a Supervisor III and was therefore not qualified.

50. Any excuse that Plaintiff did not have the required 12 month time as a Supervisor III is clearly pretext. Indeed, Plaintiff has been a Supervisor III for six years and was reinstated to his position which made him eligible to take the exam. Thus, Defendant's denial of his test application is just another example of Defendant's retaliatory campaign against Plaintiff.

51. To date, Defendant continues to harass and degrade Plaintiff both professionally and personally in clear retaliation for his participation in an arbitration against the Town, and for holding differing political views of some of his superiors.

## CLAIMS FOR RELIEF
### AS AND FOR A FIRST CAUSE OF ACTION
(First Amendment Retaliation – Free Speech)

52. By reason of the foregoing, the Defendant has unlawfully retaliated against the Plaintiff and deprived him of his rights as guaranteed by the Constitution of the United States, by depriving him of his liberty and property interests due to his

11

constitutionally protected activities in speaking out on issues of public concern in the course of his activities in the union pursuant to the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

## AS AND FOR A SECOND CAUSE OF ACTION
### (First Amendment Retaliation - Assembly)

53. By reason of the foregoing, the Defendant has unlawfully retaliated against the Plaintiff and deprived him of his rights guaranteed by the Constitution of the United States, by depriving him of his liberty and property interests due to his constitutionally protected activities in free assembly as part of a labor union, pursuant to the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

## DEFENDANT'S LIABILITY

54. Defendant, while acting under the color of law, deprived the Plaintiff of all the above mentioned constitutional rights in that Defendant intentionally committed, condoned or was deliberately indifferent to the aforementioned violations of the Plaintiff's rights. Such deliberate indifference may be inferred in the following ways:

   a. Defendant's custom or practice of depriving the Plaintiff of the aforementioned constitutional rights. These practices were so persistent and wide spread that they constitute the constructive acquiescence of policy makers;

12

    b. Inadequate training/supervision was likely to result in such violations that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision; and

    c. Policymakers engaged in and/or tacitly condoned the deprivations.

**WHEREFORE**, the Plaintiff demands judgment against Defendant for all compensatory, emotional, and psychological damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action in an amount to be determined by a jury. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

    a. Awarding reasonable attorneys fees and costs and disbursements of this action;

    b. Granting all other and further relief, equitable or otherwise, to which Plaintiff is entitled and/or which to the Court seems just and proper.

Further, Plaintiff demands a trial by jury.

Dated: Garden City, New York
July 2, 2015

Respectfully submitted,

Steven A. Morelli (SM-4721)
THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
1461 Franklin Avenue
Garden City, New York 11530
(516) 393-9151
F: (516) 280-7528

13

## VERIFICATION

State of New York      )
                       ) ss:
County of Nassau       )

EDWARD REICHERTER, being duly sworn, deposes and says that deponent is a Plaintiff in the within action; that she has read the forgoing **Verified Complaint** and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matter therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

_____
EDWARD REICHERTER

Sworn to before me this
2nd day of July, 2015

_____
NOTARY PUBLIC

